1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   DONALD AUTEN,                              No.  1:20-cv-00329-NONE-EPG (PS)

11                     Plaintiff,               FINDINGS AND RECOMMENDATIONS,
                                                RECOMMENDING GRANTING
12        v.                                    DEFENDANT'S MOTION TO DISMISS AND
                                                GRANTING LEAVE TO AMEND
13   COUNTY OF CALAVERAS,
                                                (ECF No. 19)
14                     Defendant.

15

16        Plaintiff Donald Auten ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed the

17   complaint commencing this action under the Americans with Disabilities Act on August 28, 2019,

18   and a First Amended Complaint ("FAC") on December 2, 2019. (ECF Nos. 1 & 6). On March 18,

19   2020, Defendant County of Calaveras ("Defendant") filed a motion to dismiss or for a more

20   definite statement (the "Motion"). (ECF No. 19). The assigned district judge referred the Motion

21   to the undersigned on November 30, 2020. (ECF No. 27). For the reasons that follow, the Court

22   recommends granting the Motion, dismissing the FAC, and granting leave to file a second

23   amended complaint.

24   I.       **SUMMARY OF ALLEGATIONS**

25        A.    **Allegations in First Amended Complaint**

26        The FAC alleges as follows:

27        On June 8, 2014, Plaintiff, while working for Defendant, sustained a TBI. (The Court

28   assumes TBI means traumatic brain injury.) Plaintiff began receiving medical treatment soon

                                                1

1   after sustaining the injury. On July 16, 2014, Plaintiff was "release[d] from all work duties until

2   released by medical specialists and neurology evaluation per Dr. Alexis Dasig." (ECF No. 6 at 7).

3          On June 16, 2015, "work status change from restrictions to no restrictions per Dr. Sheilds,

4   Company Doctor at Job Care with prior knowledge of requests. . . . They changed course that day

5   without my involvement and with disregard to my treatment and condition, also stopping all

6   ben[e]fits." (*Id.* at 8). On June 17, 2015, Plaintiff had a meeting with Kate Husk at human

7   resources. Husk told Plaintiff he had to return to work or receive disciplinary action. That same

8   day, Plaintiff returned to work but was sent home by acting foreman Tom Wilson "with a letter

9   stating his concerns with me on the job site."

10         On December 30, 2015, Dr. Mohamed placed Plaintiff on medical leave and stated that

11   Plaintiff "was out of work until neurology evaluation was conducted." (*Id.* at 7). Plaintiff or

12   medical professionals on his behalf asked Defendant to fund his medical treatment, but Defendant

13   did not do so. On July 21, 2016, Defendant notified Plaintiff that it intended to terminate his

14   employment and on August 8, 2016, terminated his employment.

15         In total, Plaintiff lists 29 incidents where he saw medical professionals, requested to see

16   medical professionals, had requests made by medical professionals, or filed complaints. (*Id.* at 7-

17   9).

18         Plaintiff alleges that Defendant "discriminated against me by not allowing me the proper

19   medical attention and reasonable accommodations which could have established an interactive

20   process to return to work or been deemed disabled." (*Id.*).

21         Plaintiff attached a form complaint he presented to the Equal Employment Opportunities

22   Commission ("EEOC"). It alleged he was discriminated based on his disability. Plaintiff also

23   attached the EEOC's right-to-sue letter, which was dated June 13, 2019. (*Id.* at 10-11).

24         The FAC uses a form complaint for employment discrimination.

25   **B.     Additional Factual Allegations in Plaintiff's Argument Opposing Motion to**

26   **Dismiss**

27         Plaintiff's opposition to the Motion contains various explanations of the factual

28   allegations in his FAC, including the following:

2

On June 16, 2015, Dr. Shields at JobCare decided Plaintiff should be sent back to work without restrictions. He contacted Defendant to discuss his concerns and was told to return to work the following day. On June 17, 2015, Plaintiff spoke with Husk, who told Plaintiff he needed to return to work or he would receive disciplinary actions. Plaintiff returned at 10:00 am but struggled to stay focused. Wilson, the foreman, sent Plaintiff home with a letter that stated "that him and the other foreman of the day Ray Satkamo both felt that it was an unsafe work environment for me to be on the job site." (ECF No. 25 at 4).

Plaintiff saw Dr. Nicolle Napier-Ionascu, a qualified medical examiner, for a psychological evaluation on August 26, 2015. Dr. Napier-Ionascu diagnosed Plaintiff with various psychiatric ailments and found that Plaintiff's "condition was not permanent and stationary" and requested that he receive 20 weekly therapy sessions. Dr. Napier-Ionascu stated she would re-evaluate Plaintiff in six months "at which time Vocational Rehabilitation could be addressed." (*Id.* at 5-6).

## II.     SUMMARY OF ARGUMENTS

Defendant moves to dismiss this action on several bases. First, Defendant argues that Plaintiff's claim for failure to engage in the interactive process fails because there is no independent cause of action for failure to engage. (ECF No. 19-1 at 3-4). Second, Defendant argues that Plaintiff's factual allegations are too threadbare and conclusory, and that they do not track the elements for disability discrimination and retaliation. (*Id.* at 4-7). Finally, Defendant argues that Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim within 180 days. (*Id.* at 7-8). In the alternative, Defendant moves for an order requiring Plaintiff to provide a more definite statement under Federal Rule of Civil Procedure 12(e). (*Id.* at 8-9).

Plaintiff's opposition (ECF No. 25) disputes a number of the factual contentions Defendant made in its motion to dismiss. Plaintiff does not make any legal arguments.

## III.    LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex*

1    *Hosp. Trustees*, 425 U.S. 738, 740 (1976).  The Court must also construe the alleged facts in the

2    light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on*

3    *other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813,

4    816 (9th Cir.1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's

5    favor.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  In addition, *pro se* pleadings "must

6    be held to less stringent standards than formal pleadings drafted by lawyers."  *Hebbe v. Pliler*,

7    627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally

8    construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "While the Court cannot accept

9    new facts alleged in opposition papers, a plaintiff's briefing may always be used to clarify

10   allegations in a complaint." *Yordy v. Astrue*, No. 1:09-CV-03028-NJV, 2010 WL 653099, at *2

11   (N.D. Cal. Feb. 22, 2010) (citing *Pegram v. Herdrich,* 530 U.S. 211, 230 (2000)).

12        A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

13   complaint.  *See Iqbal*, 556 U.S. at 679.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a

14   short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

15   'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell*

16   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v.*

17   *Gibson*, 355 U.S. 41, 47 (1957)).  "The issue is not whether a plaintiff will ultimately prevail but

18   whether the claimant is entitled to offer evidence to support the claims."  *Scheuer*, 416 U.S. at

19   236 (1974).

20        The first step in testing the sufficiency of the complaint is to identify any conclusory

21   allegations.  *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action,

22   supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S.

23   at 555).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

24   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

25   will not do."  *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

26        After assuming the veracity of all well-pleaded factual allegations, the second step is for

27   the court to determine whether the complaint pleads "a claim to relief that is plausible on its

28   face."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6)

standard set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV.    DISCUSSION

### A.    Employment Discrimination

To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a plaintiff must first demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). Under the ADA, "[t]he term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. § 12102(1)).

There is a two-step inquiry to determine whether an individual is qualified:

> We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." At step two, we determine whether, "with or without reasonable accommodation," the individual is able to "perform the essential functions of such position."

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127–28 (9th Cir. 2020) (quoting 29 C.F.R. § 1630.2(m)).

Defendant argues that Plaintiff has not alleged he is able to perform the essential functions of his job with or without a reasonable accommodation. The Court agrees.

Plaintiff has not alleged that with reasonable accommodations, he could perform the functions of his job. In fact, Plaintiff has alleged that the last time he went to work, he was unable

5

1    to perform his job safely. Plaintiff makes no specific allegations that he could perform his job if

2    he were given other reasonable accommodations. For instance, Plaintiff does not allege that an

3    additional unpaid leave of absence would permit him to return to his previous job or that he could

4    perform the essential functions of his position.

5          The closest allegation in the FAC is that Defendant "could have established an interactive

6    process to return to work or been deemed disabled," (ECF No. 6 at 7), which is conclusory and

7    also appears to allege that he was disabled and not a qualified individual.

8          Therefore, Plaintiff has not alleged he is a qualified individual.

9          **B.      Failure to Engage in Interactive Process**

10         Defendant argues that it is not liable for failing to engage in the interactive process

11   because "[t]here is no independent cause of action under the ADA for failure to engage in an

12   interactive process." (ECF No. 19-1 at 3). The Ninth Circuit has discussed the ADA's

13   requirement to engage in the interactive process:

14         [A]n employer has a mandatory obligation to engage in an interactive process
           with employees in order to identify and implement appropriate reasonable
15         accommodations, which can include reassignment. . . . Importantly, however, an
           employer is obligated to engage in the interactive process only if the individual is
16         otherwise qualified.

17   *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (cleaned up).

18         As discussed above, Plaintiff has not alleged he is a qualified individual. Therefore,

19   Plaintiff has failed to state a claim that Defendant failed to engage in the interactive process.

20         **C.      Failure to Accommodate**

21         "To establish a prima facie case for failure to accommodate under the ADA, [Plaintiff]

22   must show that (1) [Plaintiff] is disabled within the meaning of the ADA; (2) [Plaintiff] is a

23   qualified individual able to perform the essential functions of the job with reasonable

24   accommodation; and (3) [Plaintiff] suffered an adverse employment action because of [his]

25   disability." *Samper*, 675 F.3d at 1237 (internal quotation marks and citation omitted).

26         As before, Plaintiff has not alleged that he is a qualified individual. Thus, Plaintiff has

27   failed to state a claim for failure to accommodate.

28   ///

                                              6

1

    **D.**    **Retaliation**

2

    "To establish a prima facie case of retaliation under the ADA, an employee must show

3

that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and

4

(3) there was a causal link between the two." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848,

5

863 n. 16 (9th Cir. 2016). "Pursuing one's rights under the ADA constitutes a protected activity."

6

*Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004).

7

    Plaintiff alleges that he took leave due to his injury and that he was fired. However, he

8

does not allege that he was fired because he took leave or for engaging in any other protected

9

activity. Therefore, Plaintiff fails to state a claim for retaliation.

10

    Defendant also moved to dismiss Plaintiff's retaliation claim on the basis of exhaustion,

11

arguing that Plaintiff did not check the box on his EEOC charge for retaliation and his factual

12

allegations concern a failure to engage in the interactive process. (ECF No. 19-1 at 8).

13

    An employee alleging disability discrimination under the ADA must exhaust his

14

administrative remedies before filing suit because Title I of the ADA incorporates the exhaustion

15

requirement of Title VII and thus requires a plaintiff to file a charge with the EEOC before

16

asserting a claim in court. *See Abdul-Haqq v. Kaiser Found. Hosps.*, 669 F. App'x 462, 463 (9th

17

Cir. 2016) (unpublished) (citing *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th

18

Cir. 2002) (setting forth factors exhaustion requirement for Title VII claims); *see also* 42 U.S.C. §

19

12117(a) (extending Title VII exhaustion requirement to ADA)).

20

    The Ninth Circuit has discussed when a charge is exhausted:

21

22

23

24

25

26

27

28

    The district court must examine both the EEOC charge and the EEOC investigation to determine if claims are exhausted. *See EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994). "The EEOC charge must be construed 'with the utmost liberality.' " *Deppe v. United Airlines,* 217 F.3d 1262, 1267 (9th Cir.2000) (quoting *Farmer Bros.,* 31 F.3d 891 at 899). Exhausted claims include those actually investigated as well as those which "would have been within the scope of a 'reasonably thorough investigation.' " *Farmer Bros.,* 31 F.3d at 899 n. 5 (citing and quoting *Gibbs v. Pierce County Law Enforcement Support,* 785 F.2d 1396, 1400 (9th Cir.1986)). This includes "new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973); *see also Couveau v. American Airlines, Inc.,* 218 F.3d 1078, 1082 (9th Cir.2000) (applying principles in analogous FEHA context).

*Stephenson v. United Airlines, Inc.,* 9 F. App'x 760, 761–62 (9th Cir. 2001) (unpublished).

This is a fact-dependent determination:

> In determining whether a plaintiff has exhausted allegations that she did not
> specify in her administrative charge, it is appropriate to consider such factors as
> the alleged basis of the discrimination, dates of discriminatory acts specified
> within the charge, perpetrators of discrimination named in the charge, and any
> locations at which discrimination is alleged to have occurred. In addition, the
> court should consider plaintiff's civil claims to be reasonably related to
> allegations in the charge to the extent that those claims are consistent with the
> plaintiff's original theory of the case.

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

*See also Studymire v. Bright Horizons Children's Center, Inc*. No. CV-09-1122 PHX DGC, 2010

WL 653459 (D. Ariz. Feb. 22, 2010) (after extensive review of Ninth Circuit law, finding

plaintiff had not exhausted retaliation claim when she did not check the box for retaliation or

mention retaliation in her EEOC charge); *Scutt v. Carbonaro CPAs n Mngmt Grp*, No. CV 20-

00362 JMS-RT, 2020 WL 5880715, at *6 -8 (D. Haw. Oct. 2, 2020) (similar and granting leave to

amend).

Plaintiff attached his EEOC charge and right-to-sue letter to his complaint. (ECF No. 6 at

10-11). The charge form permits Plaintiff to check boxes indicating what the "discrimination

[was] based on," and Plaintiff checked the box only for disability. (*Id.* at 10). Plaintiff did not

check the box for retaliation. (*Id.*). His particular allegations state, in relevant part:

> On June 8, 2014, I was injured on the job. After I was injured on the job I was
> placed on leave. I attempted to return to work with restrictions from my doctor,
> but Respondent refused to engage in the interactive process and refused to allow
> me to return to work. On August 8, 2016, I was constructively discharged.
>
> I believe that I have been discriminated against based on my disability in violation
> of the Americans with Disabilities Act of 1990, as amended.

(*Id.*).

It appears that Plaintiff's retaliation charge was not exhausted because he did not check

the box for retaliation and his factual allegations do not reference any retaliation. However, it is

possible that Plaintiff may be able to allege facts indicating that his EEOC charge was sufficient

for a retaliation claim. Therefore, the Court will recommend granting to amend with respect to

this claim. *See Scutt*, 2020 WL 5880715, at *6-8.

1          **E.     Leave to Amend**

2          The Court recommends granting Plaintiff leave to amend. It is possible that Plaintiff can

3   make allegations sufficient to state a claim, and this is the first time the Court has given legal

4   standards to Plaintiff. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("[A] pro se

5   litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to

6   dismissal of the action."). The Court notes that in Plaintiff's motion to dismiss briefing, he states

7   a doctor told him that his condition was not permanent, indicating that Plaintiff may be able to

8   allege facts that would permit him to state a claim. (ECF No. 25 at 6).

9          The Court provides Plaintiff with the following additional legal standards concerning

10  complaints: A complaint is required to contain "a short and plain statement of the claim showing

11  that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

12  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

13  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

14  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient

15  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

16  (quoting *Twombly*, 550 U.S. at 570).  While a plaintiff's allegations are taken as true, courts "are

17  not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,

18  681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's

19  legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

20  **V.      FINDINGS AND RECOMMENDATIONS**

21         Based on the foregoing, IT IS HEREBY RECOMMENDED THAT

22              1.   Defendant's motion to dismiss be GRANTED; and

23              2.   Plaintiff's First Amended Complaint be dismissed, with leave to amend within 30

24                   days.

25         These findings and recommendations will be submitted to the United States district judge

26  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one

27  (21) days after being served with these findings and recommendations, either party may file

28  written objections with the Court.  The document should be captioned "Objections to Magistrate

1    Judge's Findings and Recommendations."

2           The parties are advised that failure to file objections within the specified time may result

3    in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)

4    (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

5

6    IT IS SO ORDERED.

7       Dated:   **December 4, 2020**            /s/ *Erica P. Grosjean*

8                                          UNITED STATES MAGISTRATE JUDGE