UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD AUTEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF CALAVERAS,<br><br>　　　　Defendant. | No. 1:20-cv-00329-NONE-EPG (PS)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE<br><br>(ECF No. 33) |

Plaintiff Donald Auten, proceeding *pro se* and *in forma pauperis*, filed the complaint commencing this action under the Americans with Disabilities Act (ADA) on August 28, 2019, and a first amended complaint on December 2, 2019. (ECF Nos. 1, 6). On March 18, 2020, Defendant County of Calaveras filed a motion to dismiss or for a more definite statement. (ECF No. 19). The District Court referred the motion to the undersigned on November 30, 2020, and it was recommended that the motion to dismiss be granted and that Plaintiff be given leave to file a second amended complaint (SAC). (ECF Nos. 27, 28). The District Court adopted the findings and recommendations in full. (ECF No. 31).

On March 17, 2021, Plaintiff filed his SAC. (ECF No. 32). Defendant filed the instant motion to dismiss or for a more definite statement on April 1, 2021, which was referred to the undersigned. (ECF Nos. 33, 34). Included in Defendant's filing is a request for the Court to take

1

judicial notice of certain documents. (ECF No. 33-2). For the reasons that follow, it is recommended that the District Court deny, in part, and grant, in part, the motion to dismiss or for more definite statement and deny the request to take judicial notice.

## I.  SUMMARY OF ALLEGATIONS

The SAC alleges as follows:

Defendant hired Plaintiff as "a road maintenance worker I in March of 2012," and, after Plaintiff received favorable performance reviews, promoted him to "road maintenance worker II (Haz) in March of 2013."[1] (ECF No. 32, p. 8). When he was hired, Plaintiff had "a history of recorded mental impairments, 'learning disabilities' that substantially limited a major life activity." (*Id.*). However, Plaintiff "was an otherwise fully qualified individual and was able to perform the essential functions of the position [he] held," having "a 20 year employment history in Civil Service/Public Works along with several certificates and licences that required [him] to utilize ADA accommodations for written examinations and study material for such exams" and "disabilities [that] never limited [his] ability to perform the essential functions of any position throughout [his] career." (*Id.*).

On June 8, 2014, while working for Defendant at a landfill, Plaintiff "was injured by a fellow employee/supervisor who shot an explosive humane pest control device across the inside of the tripping building that landed inches from [Plaintiff's] head and exploded." (*Id.*). Because of this incident, Plaintiff "blacked out, suffered hearing loss, ringing in [his] ears, blurred vision and [a] severe headache." (*Id.*). Plaintiff reported the incident to the acting director the next day, June 9, 2014. (*Id.* at 9). "From June 09, 2014 until July 09, 2014 [he] continued to report to work every day after the incident and was able to perform the essential functions of [his] job." (*Id.*).

On July 9, 2014, the Public Works Director learned about the incident and told Plaintiff that he "had to file a workers compensation claim, and a formal investigation of the incident began." (*Id.*). Plaintiff saw a workers' compensation doctor, Dr. Alexis Dasig, on July 16, 2014, who told Plaintiff that he was to remain out of work until a neurological evaluation was

---

[1] Minor alterations, such as omitting capitalization and correcting misspellings have been made to quoted portions of Plaintiff's filings without indicating each specific change.

2

conducted and noted that the decision to prohibit Plaintiff from working was "against [Plaintiff's] will." (*Id.*).

Plaintiff saw Dr. Francis on August 1, 2014, who recommended "a neurological evaluation." (*Id.*). Thereafter, Plaintiff contacted the workers' compensation appeal board and was instructed to request "a neurology panel of doctors to choose from because no one could give [him] an answer as to why [he] was placed out of work until he was released." (*Id.*). While waiting for a qualified medical examiner panel, Plaintiff's "mental stability was worsening." (*Id.*).

On January 9, 2015, Plaintiff was seen by Dr. Robert Rose, "a qualified medical examiner in neurology" who requested a MRI and "a neuropsychological evaluation by a certified neuropsychologist for both cognitive and affective difficulties." (*Id.* at 9-10). Thereafter, Dr. Rose "would re-evaluate [Plaintiff] and finalize [his] overall difficulties." (*Id.* at 10). Dr. Rose's report stated as follows:

> An explosion could cause significant alterations in the patient's pre-existing cognitive conditions and that at this point in time, the patient is temporarily partially disabled, able to return to work provided he does not work above ground level, around open bodies of water or around active machinery, he should avoid unusual light fixtures and he needs to be wearing hearing protection around any noisy environments until September 9, 2015.

(*Id.* at 10).

On February 6, 2015, Plaintiff saw Dr. Holly Chandler at JobCare, who "requested this follow up treatment." (*Id.*). On April 3, 2014, "JobCare recognized cognitive dysfunction and a note was made for a MRI w/contrast and neurology approval." (*Id.*).

On June 19, 2015, Plaintiff presented Defendant with "a request for medical leave from [his] primary care physician, Dr. Steven Mills" who supported the [qualified medical examiner] findings and recommendations." (*Id.* at 11). On June 22, 2015, Plaintiff wrote "a letter to County Management requesting that they honor [his] requests for these reasonable accommodations and to engage with [him] in an interactive process, and received no response. [He] expressed [his] concerns [and] included a copy of Dr. Rose's [qualified medical examiner] report stating [that] '[he] had restrictions placed on work until September 9, 2015' and [he] requested that the accommodation be honored." (*Id.*).

On July 16, 2015, Plaintiff "was cut off of all temporary workers compensation benefits after exactly one year." (*Id.* at 10). "Dr. Shields at JobCare changed [Plaintiff's] work status with no treatment completed, no follow up to the [qualified medical examiner] requests for treatment or work restrictions until September 9, 2015 had been made." (*Id.*).

Defendant failed to make any "formal individualized assessment." (*Id.*). Defendant thus "could not determine on [its] own whether [he] could perform the essential functions of the job that [he] held with or without an accommodation." (*Id.*). The qualified medical examiner opinions "were the fundamental structure for creating an individualized assessment that would have based meaning into an interactive process." (*Id.*). "Without appropriate corrective action after the initial injury and the time that was passing without the reasonable accommodations, [Plaintiff] sustained a secondary injury caused by psychological responses that were eventually categorized as PTSD and depression by Qualified Medical Examiner, Dr. Nicole Napier- Ionascu, Neuropsychologist." (*Id.*).

Plaintiff met with Kate Husk from human resources on July 17, 2015, "request[ing] an interactive process" but he "was told to return to work without restrictions or be deemed insubordinate and receive disciplinary actions." (*Id.* at 11). "After leaving HR that morning, [he] returned to the job site confused. [He] worked that day with struggle but [he] was able to perform the 'essential functions' of the job. Tom Wilson and Ray Satkamo, the two foremen expressed their concerns in a letter on [his] behalf." (*Id.*).

On August 26, 2015, Plaintiff met with a clinical neuropsychologist, Dr. Napier-Ionascu, who prepared a report stating as follows:

> Mr. Auten is claiming a psychiatric injury following an industrial injury that occurred on June 8, 2014. Given the patient's long history of ADHD, dyslexia, and what appears to be some kind of nonspecific cognitive disorder, his current injuries are most likely related to depression and posttraumatic stress disorder rather than new cognitive deficits. He most likely developed depression and posttraumatic stress disorder as a result of his injury and subsequent time off of work. Given that he has not gone through any form of psychological care the patient is not permanent and stationary. He has significant social and occupational problems that he views as insurmountable at the current time. He spends much of his time at home and reports constant fear, worry and increased crying spells. I find that the applicant's psychiatric injury was 100% caused by his industrial continuous specific injury occurring on June 8, 2014. The applicant is not yet permanent and stationary. I recommend that the applicant receive 20 sessions of weekly

> individual cognitive behavioral therapy for the treatment of depression and posttraumatic stress disorder. I would like to see him back after 6 months of the above outlined treatment.

(*Id*. at 11-12). "Dr. Napier-Ionascu diagnosed [him] that day with major depressive disorder recurrent and moderate, posttraumatic stress disorder chronic, ADHD by history, severity of psychosocial stressors of financial loss, occupational issues." (*Id.* at 12). Although Plaintiff requested "that the County authorize the treatment for the 20 cognitive behavioral weekly treatments . . . the County failed to allow [Plaintiff] this reasonable accommodation and it had been formally requested several times." (*Id.*).

On November 13, 2015, Dr. Rose prepared a supplemental report "requesting his prior studies to be approved and arranged." (*Id.*). "On December 30, 2015, [Plaintiff] was seen by Dr. Mohamed and he presented to the County an official, extended medical leave requesting [his] evaluation by the neurologist be completed and removing [him] from work duties until this evaluation was complete." (*Id.*). Plaintiff made three attempts in January 2016 to contact human resources "requesting accommodations and payment for these services." (*Id.*). However, Defendant "failed to respond." (*Id.*).

On July 21, 2016, Plaintiff received a letter from Defendant indicating an intent to terminate his employment for failing to return after his leave of absence had ended and stating that "the human resources department had not been provided information requesting an extension of leave." (*Id.* at 12-13). "On the contrary, Judy Hawkins [in human resources] received that request for an extension of leave per Dr. Mohammed on December 30, 2015 and never once indicated that the duration of the leave was unacceptable or not approved." (*Id.* at 13).

On August 8, 2016, Plaintiff was terminated from his job because he was "absent without leave." (*Id.*). If Defendant had "honored and acknowledged all the requested reasonable accommodations, requests for an interactive process and leave of absences while [Plaintiff] was awaiting treatment [he] could have returned to [his] previous job, and been spared termination." (*Id.*). "On September 24, 2019, [Plaintiff] settled [his] workers compensation claim with 'stale' medical reports, [he] was never accommodated with treatment and was never found permanent and stationary. [He] was never released back to work." (*Id.* at 14).

5

1  The SAC brings the following claims: (1) employment discrimination; (2) failure to
2  engage in interactive process; (3) failure to accommodate; and (4) retaliation.

## II.  SUMMARY OF ARGUMENTS

Defendant moves to dismiss, arguing that Plaintiff's factual allegations are too threadbare and conclusory, and that they do not track the elements for disability discrimination, failure to accommodate, and retaliation. (ECF No. 33-1, p. 9). Defendant also argues that Plaintiff's claim for failure to engage in the interactive process fails because there is no independent cause of action for failure to engage. (*Id.* at 6). Lastly, Defendant argues that Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim within 180 days. (*Id.* at 9-11). In the alternative, Defendant moves for an order requiring Plaintiff to provide a more definite statement under Federal Rule of Civil Procedure 12(e). (*Id.* at 11).

Plaintiff's opposition disputes some of the factual allegations that Defendant made in its motion to dismiss but does not offer any developed legal arguments. (ECF No. 38).

## III.  LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "While the Court cannot accept new facts alleged in opposition papers, a plaintiff's briefing may always be used to clarify allegations in a complaint." *Yordy v. Astrue*, No. 1:09-CV-03028-NJV, 2010 WL 653099, at *2 (N.D. Cal. Feb. 22, 2010) (citing *Pegram v. Herdrich,* 530 U.S. 211, 230 (2000)).

///

1   A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the
2   complaint. *See Iqbal*, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a
3   short and plain statement of the claim showing that the pleader is entitled to relief,' in order to
4   'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*
5   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v.*
6   *Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but
7   whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236
8   (1974).

9   The first step in testing the sufficiency of the complaint is to identify any conclusory
10  allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action,
11  supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at
12  555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more
13  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will
14  not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

15  After assuming the veracity of all well-pleaded factual allegations, the second step is for
16  the court to determine whether the complaint pleads "a claim to relief that is plausible on its
17  face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible
18  when the plaintiff "pleads factual content that allows the court to draw the reasonable inference
19  that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at
20  556). The standard for plausibility is not akin to a "probability requirement," but it requires "more
21  than a sheer possibility that a defendant has acted unlawfully." *Id.*

22  **IV.   DISCUSSION**

23      **A.   Employment Discrimination**

24  The ADA prohibits covered employers from discriminating "against a qualified individual
25  on the basis of disability in regard to job application procedures, the hiring, advancement, or
26  discharge of employees, employee compensation, job training, and other terms, conditions, and
27  privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie of employment
28  discrimination, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2)

7

he is a qualified individual able to perform the essential functions of the job; and (3) his employer terminated him because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

Under the ADA, "[t]he term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. § 12102(1)). "The ADA further defines the second prong of the prima facie case, 'qualified individual with a disability,' as an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Nunes*, 164 F.3d at 1246 (quoting 42 U.S.C. § 12111(8)).

There is a two-step inquiry to determine whether an individual is qualified:

> We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." At step two, we determine whether, "with or without reasonable accommodation," the individual is able to "perform the essential functions of such position."

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127–28 (9th Cir. 2020) (quoting 29 C.F.R. § 1630.2(m)).

Defendant argues that Plaintiff has not alleged that he is a qualified individual because he "has not alleged he is able to perform the essential functions of his job with or without a reasonable accommodation." (ECF No. 33-1, p. 7). The Court disagrees—the SAC specifically alleges that Plaintiff could have performed the essential functions of his job with reasonable accommodations.[2]

"Reasonable accommodations are mechanisms to remove barriers or provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001). Construing the complaint in a light

---

[2] Because Defendants have not raised it, the Court does not decide, at this stage, any other issues related to a prima facie case, such as whether the requested accommodations were reasonable.

1   most favorable to Plaintiff, he alleges that if he were accommodated with certain restrictions at
2   work and given additional unpaid leave of absence to pursue medical treatment, he would have
3   been able to perform or return to his job.
4       For example, after citing Dr. Rose's report stating that Plaintiff could return to work
5   "provided he does not work above ground level, around open bodies of water or around active
6   machinery, he should avoid unusual light fixtures and he needs to be wearing hearing protection
7   around any noisy environments until September 9, 2015," Plaintiff indicates in subsequent
8   paragraphs that this was one of the "accommodations requests [that] had been made" to
9   Defendant. (ECF No. 32, p. 10; *see also* p. 11) ("On June 22, 2015 I wrote a letter to County
10  Management requesting that they honor my requests for these reasonable accommodations and to
11  engage with me in an interactive process, and received no response. I expressed my concerns, I
12  included a copy of Dr. Rose's [qualified medical examiner] report stating 'I had restrictions
13  placed on work until September 9, 2015' *and I requested that the accommodation be honored*.")
14  (emphasis added); *cf. Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1111, 1122 (D. Haw. 2015),
15  *aff'd sub nom. Yonemoto v. Shulkin*, 725 F. App'x 482 (9th Cir. 2018) (concluding that Plaintiff's
16  use of headphones to reduce noise was a reasonable accommodation under the Rehabilitation Act,
17  which incorporates provisions of the ADA in analyzing workplace discrimination claims).
18      As another example, Plaintiff states that he requested leave to pursue medical treatment:
19  "On December 30, 2015, I was seen by Dr. Mohamed and he presented to the County an official,
20  *extended medical leave requesting my evaluation by the neurologist be completed and removing*
21  *me from work duties until this evaluation was complete*." (ECF No. 32, p. 12) (emphasis added).
22  And Plaintiff sufficiently alleges that, if his request for extended leave had been granted, he
23  would have been able to return to work and perform the essential functions of his job: "I allege
24  that if the County would have honored and acknowledged all the requested reasonable
25  accommodations, requests for an interactive process *and leave of absences while I was awaiting*
26  *treatment I could have returned to my previous job . . . .*" (*Id.* at 13) (emphasis added); *see*
27  *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001) ("A leave of absence
28  for medical treatment may be a reasonable accommodation under the ADA. *See* 29 C.F.R. 1630

app. § 1630.2(o). We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA.").

Therefore, Plaintiff has sufficiently alleged he is a qualified individual.

### B. Failure to Engage in Interactive Process

Defendant argues that it is not liable for failing to engage in the interactive process because Plaintiff has not alleged that he is a qualified individual and that "[t]here is no independent cause of action under the ADA for failure to engage in an interactive process." (ECF No. 33-1 at 6; *see also* p. 8). The Ninth Circuit has discussed the ADA's requirement to engage in the interactive process:

> [A]n employer has a mandatory obligation to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations, which can include reassignment. . . . Importantly, however, an employer is obligated to engage in the interactive process *only if the individual is otherwise qualified*.

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (cleaned up, citations omitted, and emphasis added).

As discussed above, Plaintiff has sufficiently alleged he is a qualified individual. However, "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Accordingly, to the extent that Plaintiff's complaint brings failure to engage in the interactive process as a stand-alone claim, the Court recommends that the claim be dismissed.[3]

### C. Failure to Accommodate

"To establish a prima facie case for failure to accommodate under the ADA, [Plaintiff] must show that (1) [Plaintiff] is disabled within the meaning of the ADA; (2) [Plaintiff] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [Plaintiff] suffered an adverse employment action because of [his]

---

[3] Plaintiff may still rely on the failure to engage in the interactive process as part of his other claims, including for employment discrimination and failure to accomodate.

10

disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (internal quotation marks and citation omitted).

As before, Defendant argues that Plaintiff has not alleged that he is a qualified individual. (ECF No. 33-1, p. 9). However, for the reasons given above, Plaintiff has sufficiently alleged that he is a qualified individual.

### D.     Retaliation

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 863 n. 16 (9th Cir. 2016). "Pursuing one's rights under the ADA constitutes a protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). "An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Id.* (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).

Plaintiff alleges that he "suffered adverse employment actions by the County, when they refused to acknowledge the requests for accommodation to get me back to work in an appropriate, timely manner." (ECF No. 32, p. 18). True, "requesting a reasonable accommodation" is a protected activity. *LeBarron v. Interstate Grp., LLC,* No. 2:19-cv-1739 JCM (DJA), 2021 WL 1177792, at *6 (D. Nev. Mar. 26, 2021). However, even assuming that the denial of a requested accommodation is an adverse employment action, Plaintiff fails to allege any facts showing that the denial of his requested accommodations occurred *because* he was exercising his rights under the ADA. Rather, he offers only conclusory statements that are insufficient to state a claim, such as the following: "There was a causal connection between my requests and the adverse actions of the County throughout this entire experience." (ECF No. 32, p. 18).

Moreover, Defendant argues that Plaintiff did not exhaust his retaliation claim because he did not check the box on his EEOC charge for retaliation and his factual allegations concern a failure to engage in the interactive process. (ECF No. 33-1 at 9).

An employee alleging disability discrimination under the ADA must exhaust his administrative remedies before filing suit because Title I of the ADA incorporates the exhaustion

1  requirement of Title VII and thus requires a plaintiff to file a charge with the EEOC before

2  asserting a claim in court. *See Abdul-Haqq v. Kaiser Found. Hosps.*, 669 F. App'x 462, 463 (9th

3  Cir. 2016) (unpublished) (citing *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th

4  Cir. 2002) (setting forth factors exhaustion requirement for Title VII claims); *see also* 42 U.S.C.

5  § 12117(a) (extending Title VII exhaustion requirement to ADA)).

6  The Ninth Circuit has discussed when a charge is exhausted:

> The district court must examine both the EEOC charge and the EEOC
> investigation to determine if claims are exhausted. *See EEOC v. Farmer Bros.
> Co.,* 31 F.3d 891, 899 (9th Cir.1994). "The EEOC charge must be construed 'with
> the utmost liberality.'" *Deppe v. United Airlines,* 217 F.3d 1262, 1267 (9th
> Cir.2000) (quoting *Farmer Bros.,* 31 F.3d 891 at 899). Exhausted claims include
> those actually investigated as well as those which "would have been within the
> scope of a 'reasonably thorough investigation.'" *Farmer Bros.,* 31 F.3d at 899 n. 5
> (citing and quoting *Gibbs v. Pierce County Law Enforcement Support,* 785 F.2d
> 1396, 1400 (9th Cir.1986)). This includes "new acts occurring during the
> pendency of the charge before the EEOC." *Oubichon v. North American Rockwell
> Corp.,* 482 F.2d 569, 571 (9th Cir.1973); *see also Couveau v. American Airlines,
> Inc.,* 218 F.3d 1078, 1082 (9th Cir.2000) (applying principles in analogous FEHA
> context).

*Stephenson v. United Airlines, Inc.,* 9 F. App'x 760, 761–62 (9th Cir. 2001) (unpublished).

This is a fact-dependent determination:

> In determining whether a plaintiff has exhausted allegations that she did not
> specify in her administrative charge, it is appropriate to consider such factors as
> the alleged basis of the discrimination, dates of discriminatory acts specified
> within the charge, perpetrators of discrimination named in the charge, and any
> locations at which discrimination is alleged to have occurred. In addition, the
> court should consider plaintiff's civil claims to be reasonably related to
> allegations in the charge to the extent that those claims are consistent with the
> plaintiff's original theory of the case.

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

*See also Studymire v. Bright Horizons Children's Center, Inc*. No. CV-09-1122 PHX DGC, 2010

WL 653459, at *3 (D. Ariz. Feb. 22, 2010) (after review of Ninth Circuit law, finding plaintiff

had not exhausted retaliation claim when she filed EEOC charge based on job discrimination but

she did not mention retaliation).

Plaintiff attached his EEOC charge to his SAC. (ECF No. 32, p. 21). The charge form

permits Plaintiff to check boxes indicating what the "discrimination [was] based on," and Plaintiff

12

checked the box only for disability. (*Id.*). Plaintiff did not check the box for retaliation. (*Id.*). His particular allegations state, in relevant part:

> On June 8, 2014, I was injured on the job. After I was injured on the job I was placed on leave. I attempted to return to work with restrictions from my doctor, but Respondent refused to engage in the interactive process and refused to allow me to return to work. On August 8, 2016, I was constructively discharged.
>
> I believe that I have been discriminated against based on my disability in violation of the Americans with Disabilities Act of 1990, as amended.

(*Id.*).

Thus, Plaintiff's retaliation charge was not exhausted because he did not check the box for retaliation and his factual allegations do not reference any retaliation. Moreover, Plaintiff has failed to allege facts indicating that his EEOC charge was sufficient for a retaliation claim. Therefore, the Court recommends that Defendant's motion to dismiss be granted as to the retaliation claim.

## V.     REQUEST FOR JUDICIAL NOTICE

Defendant requests for the Court to take judicial notice of certain documents filed in this case and the record in Plaintiff's workers' compensation case. (ECF 33-2). The request should be denied for multiple reasons. First, "[a] request for a court order must be made by motion," with the motion stating "with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1). Here, Defendant filed a request, not a motion. Moreover, the request does not state with particularity the grounds for seeking judicial notice; rather, it summarily asserts that the documents "are essential to assessment of Defendant's Motion and Plaintiff's Second Amended Complaint." (*Id.* at 3).

Furthermore, it does not appear that the documents are essential to assessing the SAC. For example, Defendant asks that the Court take judicial notice of the first amended complaint in this case. However, the operative complaint is the SAC, not the first amended complaint. *See* Local Rule 220 (noting that amended pleadings supersede earlier pleadings). And, as to the other documents filed of record in this case, the Court does not need to take judicial notice of them—Defendant only need cite to them. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960

(N.D. Cal. 2014) ("With the exception of the TRO application and order, I find that the documents submitted by defendants are not necessary to resolve this motion, and defendants' request for judicial notice of those documents is DENIED AS MOOT. Defendants' request for judicial notice of the TRO application and order is GRANTED, although defendants are advised for future reference that they need not seek judicial notice of documents previously filed in the same case. An accurate citation will suffice.").

**VI.     FINDINGS AND RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

1. Defendant's motion to dismiss (ECF No. 33) be denied as to Plaintiff's claims of employment discrimination and failure to accommodate;
2. Defendant's motion to dismiss (ECF No. 33) be granted as to Plaintiff's claims of failure to engage in the interactive process[4] and retaliation; and
3. Defendant's request for judicial notice (ECF No. 33-2) be denied.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, either party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 22, 2021**                         /s/ Erica P. Grosjean
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[4] As discussed above, the dismissal of Plaintiff's *stand-alone claim* for failure to engage in the interactive process does not preclude him from relying on his allegations in the SAC complaint regarding *another claim*.

14