UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD AUTEN, | No. 1:20-cv-00329-JAM-CKD (PS) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COUNTY OF CALAVERAS, | |
| Defendant. | |

Plaintiff, Donald Auten, proceeds pro se with claims under the Americans with Disabilities Act for employment discrimination and failure to accommodate. A motion for summary judgment filed by defendant, County of Calaveras, is before the court. (ECF No. 59.) This matter is before the undersigned for these findings and recommendations to the assigned district judge. See 28 U.S.C. § 636(b)(1). For the reasons set forth below, the court should enter summary judgment in defendant's favor on both of plaintiff's remaining claims.

**BACKGROUND**

Plaintiff filed the operative second amended complaint ("SAC") on March 17, 2021. (ECF No. 32.) Therein, plaintiff alleged[1] defendant hired him as "a road maintenance worker I" in

---

[1] Allegations from the SAC are recited for background purposes. The unverified SAC cannot, itself, be treated as an affidavit to oppose summary judgment. See Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

1

March of 2012, and promoted him to "road maintenance worker II" in March of 2013." (Id. at 8.). As set forth in the complaint, plaintiff was injured on the job on June 8, 2014, when a humane pest control device exploded inches from his head, causing injuries. (Id.) Plaintiff alleged he was subsequently prohibited from working—against his will—and suffered a secondary injury in the form of post-traumatic stress disorder and depression. (Id. at 10.) Thereafter, plaintiff alleges, he was terminated from his job on August 8, 2016, for the stated reason that he failed to return to work after a leave of absence ended. (Id. at 13.)

Defendant moved to dismiss the SAC. (ECF No. 33.) On August 18, 2021, the motion to dismiss was granted as to plaintiff's retaliation claim under the ADA and granted to the extent the SAC attempted to state a separate claim for failure to engage in the interactive process. (ECF No. 41.) The motion to dismiss was denied as to plaintiff's claims for employment discrimination and failure to accommodate under the ADA. (Id.)

On December 8, 2022, defendant filed the motion for summary judgment presently before the court. (ECF No. 59.) The motion is fully briefed with plaintiff's opposition and defendant's reply. (ECF Nos. 66, 67.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

////

1  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

////

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## UNDISPUTED FACTS[2]

On June 8, 2014, plaintiff suffered a work-related accident while working for defendant. (See ECF No. 66, Plaintiff's Response to Undisputed Facts, Undisputed Fact ("UF") 1.) As part of a workers' compensation claim, plaintiff was seen by a healthcare provider and taken off work. (UF 2, 3.) Temporary disability benefits were initiated on July 16, 2014. (Id.)

On June 17, 2015, plaintiff was medically released to work with no restrictions by Dr. Shields, his workers' compensation treater. (UF 12, 13, 14, 15.) Plaintiff was given notice that his temporary disability benefits were terminating. (UF 16.)

Plaintiff returned to work on June 17, 2015, but by the end of the day it was determined he was unable to safely perform job duties. (UF 17.) On June 19, 2015, plaintiff went on an unpaid leave of absence. (UF 21; ECF No. 59-7 at 2-3 (¶ 9), & 14.) On June 22, 2015, plaintiff came to

---

[2] In finding some facts to be undisputed despite plaintiff's assertion to the contrary, the court has reviewed and considered plaintiff's evidence to the extent it is relevant and appears to be competent. This includes plaintiff's statements in his declaration to the extent they are set forth under penalty of perjury and appear to be based on his personal knowledge. However, a party's mere claim that a matter is "disputed" does not suffice to dispute a proposed undisputed fact that is supported by competent evidence. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment").

defendant's offices; while there, he was informed that if he felt he could not return to work he needed to return to Dr. Shields to get a report or note taking him off work. (UF 18.) Plaintiff was, further, informed that a note from his personal physician was not sufficient. (ECF No. 59-8, ¶ 25.)

On August 13, 2015, defendant, through Jeff Crovitz, the Director of the County's Public Works Department, sent plaintiff a certified letter related to a "Reasonable Accommodation Meeting." (ECF No. 59-7 at 3 (¶ 13) & 16-17.) This letter informed plaintiff it was defendant's position that plaintiff had been "cleared to work by a physician in [his] Workers Compensation proceeding[.]" (ECF No. 59-7 at 16.) It further informed plaintiff:

> [Y]ou have no leave in your bank and are thus on unpaid leave, which I grant you until August 28, 2015. [….] Taxpayer accountability principles and California Law require me to ascertain whether you are fit for duty in the absence of an underlying justification for your absence, coupled with you being cleared for duty in the Workers Compensation forum. Therefore, I request that you contact Human Resources at the following phone number or email address to schedule a reasonable accommodation meeting in connection with your fitness for duty[.]

(Id. at 16-17.)

A meeting was scheduled between plaintiff and defendant for September 3, 2015. (UF 23.) Plaintiff did not attend the meeting. (UF 24.)[3]

By certified mail, Jeff Crovitz sent a follow up letter to plaintiff on October 13, 2015, advising plaintiff to appear at a meeting with Human Resources on October 28, 2015. (UF 26; ECF No. 59-7 at 19-20.)  The letter advised plaintiff:

> If you do not appear for the meeting with Human Resources on October 28, 2015, and fail to return the two signed fitness for duty waiver/releases, you will be deemed absent without leave and insubordinate.

(ECF No. 59-7 at 20.) Plaintiff did not appear for the meeting. (UF 27.)[4]

---

[3] Citing his declaration, plaintiff asserts "[a] meeting [for September 3, 2015] was not scheduled between Plaintiff and Defendant." (ECF No. 66 at 9, response to UF 23.) However, no specific facts set forth in the declaration support the assertion.

[4] Plaintiff asserts in one exhibit submitted with his opposition that he "spoke with Human Resources and expressed that he would be unavailable on October 28, 2015." (ECF No. 66-2 at 23-24.) However, no admissible evidence supports the assertion.

5

On November 19, 2015, defendant sent plaintiff a certified letter about scheduling a "Reasonable Accommodations Meeting." (UF 28; ECF No. 59-7 at 22.) This letter ordered plaintiff to appear telephonically for an interactive process meeting and instructed plaintiff to contact Human Resources no later than December 4, 2015. (UF 29; ECF No. 59-7 at 22.)

A telephonic meeting took place between defendant and plaintiff on December 21, 2015. (UF 30.) During the phone call on December 21, 2015, when defendant asked what kind of accommodations were needed, if any, for plaintiff to return to work, plaintiff stated he "did not feel stable enough" to work. (UF 31.)

Plaintiff did not return to work on June 19, 2016. (UF 32.)

Plaintiff was absent for five or more shifts after his leave of absence with the County ended on June 19, 2016. (UF 33.)

By certified mail dated July 21, 2016, plaintiff was notified "[t]he unpaid Leave of Absence from 6/19/2015 to 6/19/2016 has ended." (ECF No. 59-7 at 29; UF 24.) By the same letter, plaintiff was notified that defendant had decided to terminate plaintiff's employment for being absent without leave. The letter dated July 21, 2016, informed plaintiff of his right to show cause why defendant should not proceed with termination by requesting a "due process hearing" by Monday August 8, 2016. (ECF No. 59-7 at 29.)

On August 8, 2016, defendant sent a certified letter to plaintiff advising him that, instead of being terminated, he would be deemed to have resigned for having been absent for five consecutive days without explanation. (UF 35; ECF No. 59-7 at 31.) The letter referenced defendant's Memorandum of Understanding ("MOU"), 11.05, under which absence without leave for five or more shifts without a satisfactory explanation shall be deemed a tender of resignation. (UF 36; ECF No. 59-7 at 31.) The letter informed plaintiff he had 10 calendar days to appeal the proposed acceptance of the auto-resignation to the County Administrative Officer (CAO). (ECF No. 59-7 at 31.) The letter informed plaintiff that if he did not timely appeal or the CAO ruled against him, the proposed acceptance of plaintiff's resignation "shall become formal." (Id.) Plaintiff did not appeal the automatic resignation under section 2.64.680(G). (UF 40.)

////

Pursuant to Section 11.05(1) of defendant's MOU, "failure to report for duty at the expiration of a leave or failure to report for duty after a leave of absence request has been disapproved, revoked, or canceled by the department head or Director, Human Resources & Risk Management, shall be considered as an absence without leave." (UF 38.) Plaintiff acknowledged and read the MOU on March 16, 2012. (UF 37.)

On September 19, 2019, plaintiff and defendant, through their respective counsel, resolved plaintiff's workers' compensation claim for the sum of $68,000. (UF 41.)

**DISCUSSION**

**A.    Defendant's Arguments and Plaintiff's Opposition**

Defendant argues, first, that plaintiff's discrimination claim under the ADA fails as a matter of law, because plaintiff resigned and did not suffer an adverse employment action. (ECF No. 59-4 at 13-14.) Defendant argues, second, there was a legitimate, non-discriminatory reason for the employment actions defendant took, which plaintiff cannot show were pretext. (Id. at 10-15.) Defendant argues, third, plaintiff failed to establish a prima facie case for an ADA claim based on failure to accommodate. (Id. at 16-17.)

In opposition to summary judgment, plaintiff argues that if defendant had honored and acknowledged all of plaintiff's requested reasonable accommodations, requests for an interactive process, and leave of absences while plaintiff was awaiting treatment, he could have returned to job and been spared termination. (ECF No. 66-2 at 1-7.) Among other evidence, plaintiff submits his own sworn declaration in support of his opposition to the motion. (Id. at 28-32.)

**B.    Employment Discrimination Claim**

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To prevail on an ADA claim of unlawful discharge, the plaintiff must establish a prima facie case by showing that: (1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." Mayo v. PCC Structurals,

7

Inc., 795 F.3d 941, 944 (9th Cir. 2015). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]" 42 U.S.C. § 12111(8).

Under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973),

> an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination[.] The burden then shifts to the employer to provide a legitimate, nondiscriminatory… reason for the adverse employment action. If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual.

Curley v. City of North Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014).

Defendant argues plaintiff's employment discrimination claim fails because he did not suffer any adverse employment action. Citing cases in which it was undisputed the employee-plaintiff had resigned, defendant argues resignation from one's position does not constitute an adverse employment action and that plaintiff resigned when he did not return to work after his leave of absence expired, per the MOU. (ECF No. 59-4 at 11-13.) The Ninth Circuit takes an expansive view of adverse employment actions, which can be any action "reasonably likely to deter employees from engaging in protected activity." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004). In this instance, defendant has not come forth with sufficient evidence for the court to find at this juncture that plaintiff suffered no adverse employment action.

In plaintiff's view, he was still "on an extended medical leave" of which defendant "was informed" when defendant "terminated" him from his employment. (ECF No. 66-2 at 31.) Although it is undisputed that plaintiff was deemed to have resigned for being absent without leave, plaintiff was, prior to that, given notice that he was being terminated. Only after the time for plaintiff to request a hearing had expired did defendant notify plaintiff that, instead, he was being deemed to have resigned. In addition, defendant argues plaintiff failed to report to work at the end of his leave of absence on June 19, 2016, but the current record does not establish that plaintiff was notified in advance that his leave of absence was ending on June 19, 2016, or that he was otherwise instructed to return to work that day. Given the Ninth Circuit's expansive view of

8

adverse employment actions, defendant's argument that plaintiff did not suffer any adverse employment action falls short on the record evidence.

Setting aside whether plaintiff suffered an adverse employment action, his employment discrimination claim fails at the second and third steps of the McDonnell Douglas analysis. Defendant's evidence shows nondiscriminatory reasons for the employment actions taken, and plaintiff has not presented evidence of pretext to raise a genuine dispute.

To meet the burden of providing a non-discriminatory reason for an employment action, the defendant must clearly set forth "reasons for its employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination." Noyes v. Kelly Servs., 488 F.3d 1163, 1169 (9th Cir. 2007). Here, defendant states plaintiff's failure to return to work for five working days after the end of his year-long leave constituted a legitimate, non-discriminatory reason for the employment actions taken. (ECF No. 59-4 at 14.)

Although Dr. Shields medically released plaintiff to work on June 17, 2015, it was determined plaintiff was unable to safely perform job duties, and plaintiff was put on a leave of absence. Plaintiff failed to appear for a meeting to discuss his fitness for duty and reasonable accommodations on September 3, 2015. A telephonic meeting was then scheduled for October 28, 2015, and plaintiff was cautioned that if he did not appear he would be deemed absent without leave and insubordinate. Plaintiff also failed to appear for the telephonic meeting on October 28, 2015. During a telephonic meeting on December 21, 2015, when asked what accommodations, if any, plaintiff needed to return to work, plaintiff stated to defendant's Human Resources that he did not feel stable enough to work.

Plaintiff's leave of absence ended on June 19, 2016. Subsequently, he was absent for five or more shifts, after which defendant deemed him to have automatically resigned. Before taking that action, defendant communicated with plaintiff by certified mail, informing him of defendant's intention to terminate him from his employment and informing him of his right to a due process hearing. Plaintiff did not request a hearing.

////

Nondiscriminatory reasons appear in the record for the employment actions taken by defendant, including plaintiff's failure to attend meetings, indication that he was not stable enough to work when inquiry was made about reasonable accommodations, and failure to return to work or inability to work after a year-long leave of absence ended. Because defendant has satisfied its burden to provide evidence of nondiscriminatory reasons for its employment action, the burden shifts back to plaintiff to show evidence that the proffered reasons were a pretext for discrimination.[5] See McDonnell Douglas, 411 U.S. at 804.

A plaintiff can show pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Noyes, 488 F.3d at 1170 (citation omitted). Meeting the burden to show pretext on summary judgment is not onerous but requires specific and substantial facts showing a genuine issue for trial. Id.; Schuler v. Chronicle Broad. Co. Inc., 793 F.2d 1010, 1011 (9th Cir. 1986) (to meet the burden under the McDonnell Douglas framework, a plaintiff must offer specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination).

Plaintiff argues defendant "had no intention of returning [him] to [his] rightful employment." (ECF No. 66-2 at 31.) Plaintiff argues Dr. Shields released him to work without following all recommendations for plaintiff's treatment made by other doctors and specialists. (Id. at 21.) Plaintiff argues that when Dr. Shields released him to work, he had not been released to work by other doctors, including his primary physician, Dr. Mills. (Id. at 30-31.) Plaintiff argues he was "awaiting accommodations" recommended by other doctors but defendant "did not honor the Qualified Medical Examiners presence, opinion, or requests." (Id.)

---

[5] "[T]he ultimate fact of intentional discrimination" can be inferred without additional proof if a plaintiff has made out a prima facie discrimination case. Noyes, 488 F.3d at 1169-70. Here, plaintiff has not made out a prima facie case because he has not produced evidence that he is a "qualified individual" within the meaning of the ADA. 42 U.S.C. § 12112(a). That is, plaintiff has not submitted evidence tending to show he could perform the essential functions of his job with or without reasonable accommodation. See 42 U.S.C. § 12111(8).

Specifically, plaintiff asserts relevant recommendations were made by Dr. Rose, Dr. Napier-Inoascu, and Dr. Mohamad.[6] Defendant objects to the court's consideration of medical reports purportedly created by Dr. Rose, Dr. Napier-Inoascu, and Dr. Mohamad, asserting they contain unauthenticated and inadmissible hearsay, and arguing plaintiff will not be able to call any experts at trial because he did not disclose an expert witness and the deadline for doing so has passed. (ECF No. 68 at 10, 19, 30.) But even if the reports and the information therein were admissible for the purposes of this motion, they do not create a genuine dispute of fact to prevent summary judgment on plaintiff's employment discrimination claim.

Plaintiff argues Dr. Robert Rose, Neurologist, and Qualified Medical Examiner ("QME") from the State of California, provided "an opinion contrary to the opinion of Dr. Shields…" and had plaintiff on "work modifications… until September 09, 2015," rather than June 17, 2015. (ECF No. 66-2 at 20.) Plaintiff submits Dr. Rose's QME report dated January 9, 2015, and supplemental QME letter report dated November 13, 2015. (ECF No. 66 at 78-103; ECF No. 66-1 at 109-112.) But neither report calls into question that Dr. Shields had released plaintiff to work with no restrictions as of June 17, 2015, and neither shows evidence of pretext for the employment actions taken in 2016.

Plaintiff argues he was "await[ing] any form of an interactive process" to allow him to return to work but that defendant had "disregarded the many requests" for needed psychological treatment. (ECF No. 66-2 at 30.) Plaintiff submits a report purportedly created by QME and Neuropsychologist, Nicole Napier-Inoascu, based on a psychological evaluation of plaintiff on August 26, 2015, pertaining to plaintiff's workers' compensation proceeding. (ECF No. 66-1 at 28-94.) Plaintiff notes specifically that Dr. Napier-Inoascu indicated plaintiff "most likely developed depression and posttraumatic stress disorder as a result of his subsequent time off work." (ECF No. 66-2 at 22.) But even if the information in the report were admissible, plaintiff points to no specific facts in the report that constitute evidence of pretext for defendant's

---

[6] Plaintiff also references a QME evaluation report by Dr. Gupta dated November 17, 2017 (e.g., ECF No. 66-2 at 19, 23), but this evaluation took place subsequent to the events at issue in this case.

1 employment actions. Broad assertions that defendant disregarded this and other reports in making
2 its employment decisions are insufficient to plausibly show pretext.

3       Plaintiff also argues he was not actually released to work because he was "awaiting
4 medical treatment and referrals from Dr. Ahmad [Mohamad], M.D." (ECF No. 66-2 at 25.) As
5 support, plaintiff submits what he describes as a "work release" by Dr. Mohamad, issued on
6 December 30, 2015. (ECF No. 66-1 at 119.) This evidence consists of a single page of a form
7 document purportedly signed by Dr. Mohamad, on December 30, 2015, attached to a "Neurology
8 Referral Order" with a written comment that plaintiff "[c]an return to full work duty after
9 evaluated by neurology[.]" (ECF No. 66-1 at 119-120.) Setting aside the authentication issues for
10 this document for purposes of this motion, and even if the information contained therein were
11 admissible, it does not tend to dispute that Dr. Shields had already released plaintiff to work
12 without restrictions on June 17, 2015. Moreover, to any extent there existed a difference of
13 opinion between Dr. Shields and any other doctor as to whether plaintiff should have been
14 released to work on June 17, 2015, that is not evidence of pretext for defendant's employment
15 actions taken in 2016.

16       Plaintiff also states in his declaration that defendant had "been provided information
17 requesting an extension of leave" (ECF No. 66-2 at 30), but "[r]easonable accommodation does
18 not require the employer to wait indefinitely for an employee's medical condition to be
19 corrected." Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998). Finally, to
20 the extent plaintiff argues evidence of pretext is found in defendant's alleged failure to engage in
21 the interactive process and/or alleged failure to consider or provide plaintiff's requested
22 reasonable accommodations, that argument fails. As discussed below, plaintiff has not put forth
23 evidence to show that he requested a reasonable accommodation on any specific occasion, or that
24 defendant failed to engage in the interactive process.

25       Thus, the record reflects legitimate, non-discriminatory reasons for the employment
26 actions taken by defendant and plaintiff does not point to any specific and substantial facts raising
27 a genuine dispute that the non-discriminatory reasons were pretext. See Schuler, 793 F.2d at 1011.
28 There is no issue for trial and defendant is entitled to summary judgment in its favor on plaintiff's

employment discrimination claim.

### B. Failure to Accommodate

To establish a prima facie case for a failure to accommodate claim under the ADA, plaintiff must show the following: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003); see 42 U.S.C. § 12112(b)(5)(A) (requiring reasonable accommodation). As relevant here, "reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

"[O]nce an employee requests an accommodation ... the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002). The interactive process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." Id. "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." Id. (citing Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)). An employer is not obligated to provide the accommodation an employee requests or prefers; the employer need only provide some reasonable accommodation. Zivkovic, 302 F.3d at 1089.

To survive summary judgment, a plaintiff-employee must identify a facially reasonable accommodation. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002); Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006). "Once the plaintiff has made this showing, the defendant then must show special circumstances that demonstrate undue hardship in the particular circumstances." Barnett, 535 U.S. at 402.

Here, plaintiff states in his declaration that defendant refused to allow the reasonable accommodation he requested in the form of "20 weekly cognitive-psychological therapy visits." (ECF No. 66-2 at 30.) However, the record does not establish that plaintiff requested such an accommodation. Plaintiff's statements that defendant "completely disregarded all medical reports pertaining to mental/psychological needed accommodations" and "would not acknowledge any requests for psychological accommodations" (ECF No. 66-2 at 30) are too vague and conclusory to raise a genuine dispute of fact for trial regarding defendant's alleged failure to accommodate.

Plaintiff argues the accommodation of weekly therapy sessions was recommended by Neuropsychologist, QME Nicole Napier-Inoascu, on August 26, 2015. (ECF No. 66-2 at 30.) Plaintiff submits the report from Dr. Napier-Inoascu's psychological evaluation of plaintiff for his workers' compensation proceeding (ECF No. 66-1 at 28-94), to which defendant objects as unauthenticated and inadmissible hearsay. Setting aside the admissibility of the evidence for purposes of this motion, though, Dr. Napier-Inoascu's report does not tend to support plaintiff's claim that he requested a reasonable accommodation from defendant.

Plaintiff also argues defendant was in receipt of Dr. Rose's letter and supplemental QME report dated November 13, 2015, "requesting accommodations for necessary therapy." (ECF No. 66 at 23, response to UF 28.) This referenced letter report states Dr. Rose had recently received a notice of deposition, and that "certain studies had still not been completed" which he believed should be completed "in order to determine the overall disability/impairment status, apportionment and all of the other factors that are necessary for a final Workers' Compensation report." (ECF No. 66-1 at 110-11.) Even if the information in Dr. Rose's supplemental QME letter report were admissible, it does not support plaintiff's claim that he requested a reasonable accommodation.

Plaintiff also suggests he requested reasonable accommodations during the phone call on December 21, 2015, with defendant's Human Resources. (ECF No. 66 at 11, response to UF 31.) Citing his declaration, plaintiff argues he "sincerely pleaded to the Defendant that he was in need of the requested cognitive-behavior weekly therapy treatments as reasonable accommodations." (Id.) However, plaintiff's declaration does not specifically address the matter. Instead, the

information in plaintiff's declaration about when and where plaintiff allegedly requested any reasonable accommodation is vague and lacks specificity. (E.g., ECF No. 66-2 at 30 ["Every time I communicated with the Defendant I pleaded that they please honor these accommodations."].)

Finally, plaintiff asserts letters faxed to defendant's Human Resources, and to York Risk Services Group (a third-party administrator for plaintiff's worker's compensation claim), on January 20, 2016, and on January 25, 2016, constituted attempts to request accommodations. (ECF No. 66-2 at 25.) Assuming for purposes of this motion that these letters are properly authenticated and admissible, the court cannot plausibly construe them as requests for reasonable accommodations. (See id. at 131-34.) Instead, they appear to be inquiries about payment for a particular referral order for medical services. (See id.)

"To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011). Plaintiff has not put forth any specific facts showing that he requested a facially reasonable accommodation from defendant.

On the other hand, defendant has put forth evidence of repeated and direct communication to plaintiff to explore possible reasonable accommodations and plaintiff's fitness for duty, but plaintiff failed to attend meetings that were scheduled on two occasions. As set forth above, it is undisputed that when defendant and plaintiff did meet telephonically, and defendant asked plaintiff to identify reasonable accommodations he would need to return to work, plaintiff responded that he did not feel stable enough to work.

Moreover, defendant did provide plaintiff with a reasonable accommodation in the form of a one-year leave of absence, after which plaintiff still did not or could not return to work. See Zivkovic, 302 F.3d at 1089 (employer must provide some reasonable accommodation, which need not be the employee's preferred accommodation). Under the circumstances, and in the absence of evidence that plaintiff requested a different reasonable accommodation, defendant is not liable under the ADA for failure to accommodate.[7] See id. at 1089 ("Liability for failure to

---

[7] Plaintiff also has not submitted any evidence to meet his burden to show that the reasonable accommodation he claims he requested—or some other reasonable accommodation—would have

provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process."); Gantt, 143 F.3d at 1047 ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected."). Thus, there is no issue for trial and defendant is entitled to summary judgment on plaintiff's employment discrimination claim.

## CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS RECOMMENDED as follows:

1. Defendant's motion for summary judgment be granted as to plaintiff's remaining claims under the ADA;

2. Judgment be entered in favor of defendant, County of Calaveras; and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 28, 2023

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
Auten20cv329.msj

---

enabled him to perform the essential functions of his job, as required to make a prima facie case for a failure to accommodate claim under the ADA. See Allen, 348 F.3d at 1114.

16